UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MELISSA L. REED,

        Plaintiff,

v.

        Case Number 07-12518
        Honorable Thomas L. Ludington

INDEPENDENT BANK CORPORATION
and HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,

        Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT, DENYING PLAINTIFF'S MOTION TO REVERSE THE PLAN ADMINISTRATOR'S DECISION, AFFIRMING THE PLAN ADMINISTRATOR'S TERMINATION OF BENEFITS, AND ORDERING PLAINTIFF TO SHOW CAUSE WHY REMAINING CLAIMS SHOULD NOT BE DISMISSED**

On June 12, 2007, Plaintiff Melissa L. Reed ("Plaintiff") filed a complaint alleging that the administrator of her long term disability benefits plan, Defendant Hartford Life and Accident Insurance Company ("Defendant"), violated the plan by arbitrarily and capriciously terminating her benefits. As a benefit of her employment, Defendant Independent Bank Corporation ("Independent," collectively "Defendants") provided Plaintiff with the long term disability benefit plan under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq*.

On February 4, 2005, Plaintiff ceased employment because she suffered from degenerative disc disease of the lower back. On August 10, 2005, Defendant approved Plaintiff's application for long term benefits. Subsequently, Plaintiff applied for disability benefits from the Social Security Administration ("SSA"), but the SSA denied her disability claim on September 30, 2005. Thereafter, Defendant reevaluated Plaintiff's claim for long term disability, including placing Plaintiff under video surveillance.

On November 9, 2006, Defendant determined that Plaintiff did not continue to meet the policy's definition of disabled and terminated her benefits. Plaintiff appealed the denial, but Defendant upheld its decision to terminate benefits. Ultimately, Defendant concluded that Plaintiff, with reasonable accommodations, could perform the essential duties of her sedentary job as a loan coordinator. Plaintiff seeks review of that decision in this Court. 29 U.S.C. § 1132(a)(1)(B). The Court has considered the parties' submissions and now concludes that Defendant's denial of benefits was not arbitrary and capricious.

Although the cross-motions were scheduled for hearing before this Court on June 30, 2008, the Court has reviewed the parties' submissions and finds that the relevant law and facts have been set forth in the briefs. The Court concludes that oral argument will not aid in the disposition of the motion. Accordingly, it is **ORDERED** that the motion be decided on the papers submitted. *Compare* E.D. Mich. LR 7.1(e)(2).

I

In 1999, Plaintiff first experienced lower back pain. Administrative Record ("AR") at 147. Plaintiff was diagnosed with degenerative disc disease in the lumbar region of the spine. As a result, Plaintiff suffered from lower back pain and severe headaches. *Id.* For approximately four years, she was, however, functional and able to work. On April 23, 2003, Independent hired Plaintiff as a loan coordinator, a sedentary occupation. AR at 404. Her employment was unaffected by her ailment until 2004. *Id.* On October 18, 2004, Plaintiff first took leave from her employment because of her back malady. *Id.* On February 2, 2005, Independent reduced Plaintiff's work week, at her request, from forty total hours a week to twenty-five total hours a week to accommodate her

back malady. *Id*. Soon thereafter, Plaintiff, at her physician's direction, ceased all work activity on February 4, 2005. *Id.*

According to Independent's assistant vice-president of human resources, a loan coordinator's primary functions are computer work and file preparation. AR at 404. A description of the physical aspects of her job estimated that a loan coordinator "continuously" sits. AR at 405. The vice-president concluded, however, that Plaintiff's position as loan coordinator could "be performed by alternating [between] sitting and standing." *Id.*

On August 10, 2005, Defendant approved Plaintiff's application for long term disability benefits, effective June 30, 2005. AR at 326. Plaintiff received approximately $1,561.49 in monthly benefits. AR at 327. Defendant considered Plaintiff disabled, as defined by the plan, because her back malady "prevented from performing one or more of the Essential Duties of [Her] Occupation." *Id.* To remain eligible for benefits, Defendant required Plaintiff to periodically submit supplementary claim forms to demonstrate that her disability continued. *Id.* Defendant also required Plaintiff to apply for disability benefits through the SSA. AR at 328.

On September 30, 2005, the SSA determined that Plaintiff was not disabled under its definition of disabled. AR at 267. The SSA concluded that Plaintiff's condition was "not severe enough" to stop her from engaging in substantial work – as defined by the SSA. AR at 267-68. The SSA acknowledged, however, that Plaintiff's condition "prevent[ed] her from doing [her] past job(s)." AR at 267.

Plaintiff's treating physician was Carlton Capulson, M.D. ("Treating Physician"). Jim Knight ("Physician's Assistant") served as the physician's assistant to the Treating Physician. Both treated Plaintiff's back malady.

On April 11, 2006, Plaintiff completed a claimant questionnaire to demonstrate continued disability, which included an "attending physician's statement of continued disability." AR at 188-97. The Physician's Assistant indicated in the questionnaire that Plaintiff was unable to bend at the waist, squat, reach, push, or pull. AR at 194-95. He also provided the restriction that Plaintiff was "unable to stand or sit long periods due to extreme pain and stiffening of back." AR at 195. The Physician's Assistant determined that Plaintiff's back malady remained unchanged from her previous evaluations. AR at 196. He noted that Plaintiff reported "severe lumbar pain [that] radiate[d] down [her] legs." *Id.* The report referenced two MRI examinations of Plaintiff's lumbar area. *Id.* An April 4, 2004 examination revealed disc herniation of L5-S1 and a January 31, 2005 examination showed "mild to moderate degenerative change with moderately severe disc narrowing and mild bulging [] L5-S1." *Id.*

On May 5, 2006, Plaintiff's claim was referred to Defendant's special investigation unit ("SIU"). AR at 554-71. Defendant investigated Plaintiff because: (1) "the duties and responsibilities of being a single parent may be inconsistent with her restrictions and limitations provided by her physician," (2) a neurologist had determined that Plaintiff "had an essentially normal neurological examination;" and (3) Plaintiff's name was associated with a drywall business. *Id.* The SIU recorded Plaintiff on video on May 31, June 21, and June 22, 2006. AR at 559. The surveillance demonstrated that Plaintiff "ambulate[d] in a normal manner with no apparent restrictions and at no time did [Plaintiff] utilize any visible brace or support." *Id.* Plaintiff also left her home for periods in excess of four hours. AR at 560. The report emphasized that Plaintiff was in a seated position for almost two hours while driving, which was inconsistent with her medical restriction. AR at 560-61. Additionally, the SIU observed Plaintiff bending at the waist, pulling and

pushing, lifting her children into the vehicle, and getting into and out of her vehicle without assistance. AR at 559-61.

On August 8, 2006, Plaintiff provided a statement of continuing disability as a part of Defendant's investigation. AR at 575-82. In the statement, Plaintiff acknowledged that she was able to bend at the waist, push, pull, and lift light items, and walk for up to thirty minutes. AR at 576-77. She also indicated that the maximum amount of time that she was able to sit or stand without suffering severe pain was fifteen minutes. AR at 577-78.

On October 29, 2006, Todd J. Lyon, M.D., board certified in family practice, provided a medical review at the request of Defendant. AR at 146-53. Dr. Lyon reviewed Plaintiff's medical records, the surveillance report, and spoke with the Physician's Assistant. *Id.* According to Dr. Lyon, the Physician's Assistant confirmed that Plaintiff suffered from "single level lumber degenerative disc disease without evidence of significant physical exam abnormality or evidence of neurological compression." AR at 151. Lyon concluded that the surveillance footage demonstrated that Plaintiff could occasionally engage in bending, stooping, and twisting. AR at 152. Dr. Lyon represented that the Physician's Assistant concurred that Plaintiff did not have any significant limitations on her functional capacity. AR at 153. Dr. Lyon suggested the "accommodation of the freedom to adjust positions periodically throughout the day" was warranted, but that "no evidence support[ed] any other additional restriction, limitation or work accommodation for [Plaintiff]." *Id.*

On November 9, 2006, Defendant terminated Plaintiff's benefits after concluding that "the evidence submitted in support of your claim" did not demonstrate that she remained disabled, under the provisions of the plan. AR at 110. Defendant's claims specialist, Brian T. Matthews, concluded

that Dr. Lyon's report taken together with the lack of objective verification for the basis of the Treating Physician's and the Physician's Assistant's opinion that Plaintiff's back malady restricted her from performing her employment duties. AR at 117. Matthews concluded as follows:

> [Defendant] compared this information to the essential duties of Your Occupation as a *Designer*. The weight of the evidence does not support that you are prevented from performing the Essential Duties of Your Occupation. Further, the restrictions and limitations provided by [Knight] on October 26, 2006 are within the physical demands of your occupation.

AR at 117-18 (emphasis added). It is unclear whether Matthews' suggestion that Plaintiff served as a designer, rather than a loan coordinator, was a word processing error or substantive error. It does not appear, however, that the mistake had any practical effect on Defendant's ultimate conclusion.

On December 4, 2006, Richard Jankowski, M.D., a radiologist, found that Plaintiff's spine demonstrated "mild degenerative ridges and bulges of disc material from C3-C6 . . . but no significant superimposed pathology [] present." AR at 104. The ridging and bulge material did "not appear to be large enough to cause nerve root effacement nor cord compression at [that] time." *Id.*

On December 21, 2006, the Physician's Assistant instructed Plaintiff to undergo four weeks of physical therapy, three times a week. AR at 109. He also wrote a "prescription" that Plaintiff was unable to "remain in a seated position for more than [ten] minutes." *Id.*

On January 22, 2007, Donald Getz, M.D., board certified in orthopedic surgery, reviewed Plaintiff's medical records at Defendant's request. AR at 74-78. Dr. Getz acknowledged that MRI examinations demonstrated "evidence of significant L5-S1 degenerative disk disease," but the "findings on physical examinations have for the most part been relatively benign." AR at 76. As a result, Dr. Getz believed that Plaintiff's primary restrictions relate to "prolonged sitting, standing,

and walking." *Id.* He found no indication of "substantial change between October 2004" and the date of his review. *Id.* After reviewing the surveillance video, Dr. Getz concluded reached the following conclusions:

> I can find nothing in the medical documentation that either substantiate's [sic] or deny's [sic] the claimant's claimed functional limitations. These primarily involved prolonged sitting or standing or walking. The surveillance video did not successfully demonstrate the claimant's capability in these three functions.
>
> * * *
>
> Based on the clinical information provided as well as the surveillance video and surveillance summary as well as the claimant's own assessment of her capabilities, reasonable restrictions will involved the activities of sitting[,] standing[,] and walking. Sitting should be limited to periods of 15 to 30 minutes[,] alternating with standing and walking for periods of up to one half hour. Bending[,] crawling[,] squatting[,] kneeling[,] and light lifting up to 15 pounds with both hands on an occasional basis should be possible. Driving should be possible for moderate distances and limited use of the upper extremities is also reasonable.
>
> * * *
>
> With the exception of the findings on the MRI[,] low back subjective complaints have not been substantiated by significant medical findings. A three day surveillance video demonstrating frequent sitting, standing, stooping, bending, driving [,] and walking suggested actual functional abilities [that] exceeded claimed limitations. The video failed to demonstrate sitting, standing, or walking tolerances beyond 15 minutes. All activities appeared fluid without any sign of discomfort or protective motions in anticipation of discomfort.

AR at 76-78. Dr. Getz also spoke with the Physician's Assistant about the surveillance. AR at 75. The surveillance footage did not change Plaintiff's restrictions, according to the Physician's Assistant. *Id.*

On February 15, 2007, George Palm, an occupational therapist ("Occupational Therapist"), performed a functional capacities evaluation ("FCE") of the Plaintiff. AR at 35-46. Plaintiff participated in twelve physical tests for Palm to evaluate her physical capacity. *Id.* The

Occupational Therapist concluded that Plaintiff exhibited self-limiting behavior in ten of the twelve tests, such that the results only demonstrated her minimum level of ability. According to the Occupational Therapist, Plaintiff restrained her effort during tests administered to measure her functional ability to walk, sit, and stand. AR at 39. He suggested that Plaintiff's performance demonstrated that she could, at a minimum, sit for a period equivalent to one-third of the day. *Id.* He noted, however, that he could not accurately determine Plaintiff's maximum ability to sit because of her limiting conduct. *Id.* Although pain was the possible cause of the self-limiting behavior, the Occupational Therapist believed that such a high level of self-limiting conduct in Plaintiff's examination was "very strong evidence of low effort and inconsistent behavior." AR at 41.

On February 26, 2007, Defendant denied Plaintiff's appeal concluding that her disability did not prevent her from performing the essential duties of her occupation. AR at 32. Defendant reasoned as follows:

> [Plaintiff] appealed the decision arguing that [she] remain[s] unable to work, primarily because of [her] reported inability to sit. In support of [her] position [she] submitted copies of MRI's that [she] claim[s] document significant problems.
>
> To initiate the review of [Plaintiff's] appeal, [her] claim file was reviewed in full. Of note, the MRI of [her] cervical (neck) area indicates that "no significant superimposed pathology" was found and therefore [her] statement that the test shows significant problems with [her] neck is not supported by the actual findings. In addition, the MRI of your lumbar (low back) area indicates that "no change from prior" was found, which is in direct contrast to [her] statement that [her] back condition [has] worsened.
>
> While [Plaintiff] may have some limitations to [her] activities, it is unclear why [she] would be unable to perform a sedentary occupation which inherently allows for positional changes, such as [her] own occupation as a Loan Coordinator. This is further confused by [Plaintiff's] activities during surveillance as [she was] observed driving for more than ten minutes and [she was] also noted to be away from [her] residence for hours at time.
>
> * * *

> While [Plaintiff's] true functional abilities remains unknown, it is clear that [she] retained the capacity for at least a sedentary to light work duty as long as [she] can change positions on occasion. Therefore . . . [Plaintiff does] not meet the definition of Disability from [her] Occupation.

AR at 32-34.

The policy defined "disability" and "disabled" as follows:

'Disability' and 'disabled' mean that because of injury or sickness:

> 1. during the Elimination period, you are prevented from performing one or more of the Essential Duties of Your Occupation;
>
> 2. for the 24 months following the Elimination period, you are prevented from performing one or more of the Essential Duties of Your Occupation, and as a result your Current Monthly Earnings are less than 80% of your indexed Pre-disability Earnings,
>
> 3. after that, you are prevented from performing one or more of the Essential Duties of Any Occupation

AR at 23. The plan also defines "Essential Duty" as "a duty that : (1) is substantial, not incidental; (2) is fundamental or inherent to the occupation; and (3) can not be reasonably omitted or changed." *Id.* Lastly, "Your Occupation" is defined as "it is recognized in the general workplace. Your Occupation does not not mean the specific job you are performing for a specific employer or at a specific location." AR at 26.

II

Section 502(a)(1)(B) of ERISA authorizes an individual to bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Previously, the Court concluded that the arbitrary and capricious standard of review applies to Defendant's denial of long term benefits. See Dkt. # 31 at 12. This highly deferential review is

appropriate when the ERISA regulated plan at issue clearly grants discretion to the plan administrator. *Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 595-97 (6th Cir. 2001).

The Sixth Circuit has described the arbitrary and capricious standard of review as "the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Shields v. Reader's Digest Ass'n, Inc.*, 331 F.3d 536, 541 (6th Cir. 2003) (internal quotations and citation omitted). When applying this standard, the Court must determine whether the administrator's decision was reasonable in light of the available record evidence. Although the evidence may be sufficient to support a finding of disability, if there is a reasonable explanation for the administrator's decision denying benefits in light of the plan's provisions, then the decision was neither arbitrary nor capricious. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000). Yet the deferential standard of review does not equate with using a rubber stamp – a court must review the quantity and quality of the medical evidence on each side. *Evans v. Unumprovident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006).

A decision reviewed according to the arbitrary and capricious standard must be upheld if it is supported by "substantial evidence." *Baker v. United Mine Workers of America Health & Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991). Substantial evidence supports an administrator's decision if the evidence is "rational in light of the plan's provisions." *See Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997). A court generally considers only that evidence presented to the plan administrator at the time he or she determined the employee's eligibility in accordance with the plan's terms. *Id.* The Court's review, thus, is limited to the administrative record. *See Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618 (6th Cir. 1998).

Furthermore, courts "must take into consideration [a plan administrator] is acting under a potential conflict of interest because it is both the decision maker, determining which claims are covered, and also the payor of those claims." *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 292 (6th Cir. 2005) (*citing Marks v. Newcourt Credit Group*, 342 F.3d 444, 457 (6th Cir. 2003). Though the arbitrary and capricious standard "remains unchanged," courts should still consider the conflict of interest when "applying the standard." *Id.* (emphasis omitted). Indeed, the Supreme Court recently acknowledged that a court may consider the plan administrator's inherent conflict of interest when it is in the position of deciding a claim and responsible for payment of the claim. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. ____, 2008 U.S. Lexis 5030, *17-*18 (2008). Thus, courts may consider a variety of factors in reviewing whether a plan administrator's determination was arbitrary and capricious.

### III

The salient question before the Court is whether Defendant's termination of Plaintiff's disability benefits was arbitrary and capricious based on the entire record. Here, Defendant terminated Plaintiff's benefits, concluding that insufficient evidence supported the conclusion that she was unable to remain seated for more than fifteen minutes. Additionally, Defendant concluded that even if the functional limitations were correct, then she could still perform the duties of her sedentary occupation by making reasonable accommodations.

It is undisputed that the record contains objective medical evidence supporting the diagnosis of degenerative disc disease. Indeed, Defendant acknowledged as much in its denial of benefits and in its pleadings. *See* AR at 112; dkt. # 39 at 9. Defendant maintains, however, that it "reasonably based its determination on a lack of objective evidence of her functional limitations." Dkt. # 39 at

6. In doing so, Defendant "considered inconsistencies based on Plaintiff's observed behavior and her own self-reports and self-limiting behavior." *Id.* at 6-7. Defendant correctly emphasizes that Plaintiff's functional limitations are germane to whether she is disabled under the meaning of the plan, not whether she suffers from a medical affliction.

Under the terms of the plan, Plaintiff is considered disabled if she is unable to perform one or more of the essential duties of a loan coordinator. The dispute then, turns on whether Plaintiff's lower back pain, generated by her degenerative disc disease, restricts Plaintiff from remaining in a seated position for more than fifteen minutes.[1] Defendant determined that objective evidence does not support that functional limitation, and even if it does, Plaintiff is still able to perform the essential duties of a loan coordinator by accepting reasonable accommodations (i.e. shifting positions, standing, etc.). Plaintiff contends that the opinions and limitations set forth by treating physicians objectively demonstrates the functional limitation.

Prior to the termination of benefits, the Treating Physician and Physician's Assistant offered restrictions with respect to Plaintiff's ability to remain seated. They also offered functional restrictions relative to bending at the waist, pushing, pulling, lifting, squatting, sitting, and standing. Those functional limitations came into doubt when the SIU observed Plaintiff bending at the waist, pushing, pulling, lifting items, and driving for a period longer than she had represented she was able to do. Upon questioning by an investigator, Plaintiff acknowledged her ability to bend at the waist, to lift items at least 13 pounds, to squat, and push or pull items that offer light resistance. Plaintiff continued to assert, however, limitations on her ability to remain seated or standing for more than

---

[1] Though the record demonstrates that her back malady manifests itself in a variety of symptoms, e.g. headaches, the parties focused on Defendant's decision with respect to the sitting restriction. Likewise, Plaintiff's record also demonstrates symptoms of depression, but the parties do not address whether her depression is a significant basis to find her disabled under the plan.

-12-

fifteen to thirty minutes. Likewise, the Physician's Assistant believed that Plaintiff was unable to remain in a seated position for more than ten minutes. Indeed, Plaintiff asserts that the record contains objective medical evidence, including the diagnosis of degenerative disc disease, that the limitation is warranted. On the contrary, Defendant asserts that objective evidence supporting the diagnosis of degenerative disc disease is only related to the existence of a back malady, not Plaintiff's functional limitations. Defendant maintains that, under the terms of the plan, the burden is on Plaintiff to demonstrate that objective medical data supports the functional limitations.

It is reasonable for a plan administrator to require objective medical evidence of a claimant's functional capacity when it would assist the administrator in determining whether the claimant meets the plan's definition of disabled. *Cooper v. Life Ins. Co. of North America*, 486 F.3d 157, 166-67 (6th Cir. 2007). Moreover, a "plan administrator may not arbitrarily disregard reliable medical evidence proffered by a claimant, including the opinions of a treating physician." *Id.* (*citing Evans v. UnumProvident Corp.*, 434 F.3d 866, 877 (6th Cir.2006)). On the other hand, an administrator is not required to "blindly accept" the opinions of treating physicians in the absence of objective medical data. *Id.* (*citing See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003)). Additionally, an administrator may consider video surveillance indicating the plaintiff's functional limitations as the plaintiff "carries the burden of presenting evidence showing that he or she was disabled" under the plans' provisions. *Rose v. Hartford Fin. Servs. Group*, 2008 U.S. App. Lexis 5742, *22-*23 (6th Cir. 2008) (unreported).

Here, Defendant's decision to terminate Plaintiff's benefits was not arbitrary or capricious. Defendant initially accepted Plaintiff's functional limitations when granting her application for benefits. Defendant revisited her functional limitations when it initiated the SIU investigation in

May of 2006. The plan required the Plaintiff to reasonably supplement her claim with information demonstrating her continuing disability. *See, e.g.* AR at 188-97. In April of 2006, Plaintiff's medical provider offered an opinion regarding her functional limitations and referenced two MRI examinations.

Defendant found the opinion to be based on subjective complaints and requested its SIU investigate the possibility that the claim was fraudulent. The surveillance video revealed inconsistencies between her medical provider's opinion regarding her functional limitations and Plaintiff's demonstrated functional ability. For example, Plaintiff was bending at the waist multiple times in the video, despite her physician's opinion from April of 2006 that she was unable to do so. Moreover, the SIU reported that Plaintiff drove in her vehicle for almost two hours. Again, this observation contradicts the Physician's Assistant's opinion that she was capable of being seated for more than ten minutes.

Defendant then referred the matter to Dr. Lyon for a review. Dr. Lyon affirmed that Plaintiff suffered from "moderately severe lumbar degenerative disc disease." AR at 153. After speaking with the Physician's Assistant, Dr. Lyon concluded that Plaintiff's illness subjected her to the following limitations: (1) a restriction from repetitive bending, twisting, and stooping, (2) a restriction from lifting items over thirty pounds, and (3) the necessity to "adjust positions periodically throughout the day for comfort." *Id.*

Thereafter, Defendant concluded that Plaintiff was able to perform the essential duties of her occupation and terminated her benefits. Defendant relied on the inability of the Treating Physician and Physician's Assistant to offer objective evidence in support of the restrictions.

After Plaintiff appealed the decision, Defendant retained an orthopedic surgeon to review her records. Dr. Getz concluded that the record did not support functional limitations that prevent Plaintiff from performing a full-time sedentary job, but found that Plaintiff should not sit for more than thirty minutes, alternating between standing and walking. AR at 77. The video surveillance, in Dr. Getz's opinion, suggested that Plaintiff's "actual functional abilities exceeded claimed limitations." AR at 78. This conclusion was supported by Plaintiff's performance on the FCE. The Occupational Therapist suggested "very strong evidence of low effort and inconsistent behavior." AR at 41.

Defendant affirmed its earlier denial after considering the opinion of Dr. Getz and the results of the FCE. Defendant concluded that, though Plaintiff's "true functional ability remain[ed] unknown," the record demonstrated she was capable of performing sedentary work. The denial letter acknowledged Dr. Getz's recommendation that Plaintiff should not engage in prolonged sitting. Defendant reasoned, however, that such a limitation does not restrain her from performing her occupation because her position "inherently allows for position changes." AR at 33.

Ultimately, Defendant's decision was not arbitrary or capricious under Sixth Circuit precedent. Defendant rejected the recommendations of Plaintiff's physicians because neither offered objective evidence that supported functional restrictions related to extended sitting. Moreover, the video surveillance demonstrated that at least some of the suggested restrictions were not warranted. With respect to the sitting restriction, circumstantial evidence conflicted with Plaintiff's subjective complaints. Finally, Defendant terminated Plaintiff's benefits after engaging two medical reviews and an FCE. Each doubted the suggested limitations and did not find restrictions that prevented

Plaintiff from performing her sedentary occupation. In light of the entire record, Defendant's decision was reasonable.

Plaintiff offers a few arguments that are unpersuasive in light of the applicable arbitrary and capricious standard. First, Plaintiff contends that Defendant employed the incorrect occupational standard because a letter provided that the plan defined disabled as being unable to perform *all* essential duties, not *one or more* essential duties. Upon review of the record, the original denial letter employs the correct standard and the letter denying the appeal omitted the term *one or more*. This omission does not indicate that the decision was necessarily arbitrary or capricious. Defendant's denial did not assert that Plaintiff was not disabled because Plaintiff could perform other duties of her employment (i.e. reading, speaking, etc.). Rather, Defendant concluded that Plaintiff, with the assistance of reasonable accommodations, did not have *any* limitations that restricted her from her occupation.

Second, Plaintiff contends that Defendant "cherry-picked" evidence favorable to its interpretation of the record. The record demonstrates otherwise. Dr. Getz and Dr. Lyon contacted the Physician's Assistant to illicit further comment. Additionally, Defendant acknowledged the limitations suggested by Dr. Getz and relied on Dr. Getz's ultimate conclusion that Plaintiff can perform a sedentary occupation with the assistance of reasonable accommodations. Lastly, Plaintiff did not indicate which treating physician reports Defendant omitted to include in the medical review. It appears that Defendant and its medical reviewers considered the entire record.

Third, Plaintiff asserts that the objective medical evidence did not support improvement in Plaintiff's condition from the date benefits were approved to the date benefits were terminated. As discussed above, Defendant's decision was not based on the diagnosis of degenerative disc disease.

Rather, it centered on the functional limitations the ailment presented. Both Plaintiff and Defendant supplemented the record with evidence relevant to Plaintiff's functional limitations. Importantly, Defendant became aware of evidence – e.g. the video surveillance – that contradicted the limitations proffered by Plaintiff's medical providers. Such evidence supported the view that Plaintiff's functional capabilities had improved or the physical limitations were not accurate.

Lastly, Plaintiff's response brief asserts that Defendant acted in its own self-interest in terminating Plaintiff's benefits. Indeed, courts may consider a conflict of interest as a factor when determining whether an administrator's decision was arbitrary and capricious. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. ____, 2008 U.S. Lexis 5030, *17-*18 (2008). Plaintiff asserts that the aforementioned principle applies without fully explaining the basis for the conflict, and Defendant did not address the argument in its response brief. Apparently, Plaintiff contends that the fact that Defendant was responsible for paying the entire balance of Plaintiff's disability benefits until she reached the age of retirement demonstrates the termination of benefits was arbitrary and capricious. In light of the entire record, Defendant's determination is supported by substantial evidence and survives a higher level of scrutiny that an inherent conflict of interest entails, Plaintiff's assertion notwithstanding.

Therefore, the Court will deny Plaintiff's motion to reverse administrator's decision , grant Defendants' motion for judgment, and affirm the administrator's decision.

IV

Finally, the Court will order Plaintiff to show cause why her remaining claims should not be dismissed. Along with her action to recover disability benefits pursuant to 29 U.S.C. § 1132(a)(1)(B), Plaintiff's complaint also alleges claims for breach of fiduciary duty under ERISA,

29 U.S.C. §§ 1101 *et seq.*, breach of contract, and breach of express warranty. Dkt. # 1. In light of the Court's conclusions in this opinion and ERISA's preemption provision, 29 U.S.C. § 1144, Plaintiff must show cause whether the remaining claims are still viable.

V

Accordingly, it is **ORDERED** that Plaintiff's motion to reverse administrator's decision terminating long term benefits [Dkt. # 29] is **DENIED**.

It is further **ORDERED** that Defendants' motion for judgment [Dkt. # 35] is **GRANTED**. The plan administrator's decision terminating Plaintiff's long term benefits is **AFFIRMED**.

It is further **ORDERED** that Plaintiff will show cause why the remaining claims should not be dismissed on or before **August 6, 2008.**

                                   s/Thomas L. Ludington
                                   THOMAS L. LUDINGTON
                                   United States District Judge

Dated: July 16, 2008

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 16, 2008.

                           s/Tracy A. Jacobs
                           TRACY A. JACOBS